WIGGINS ET UX, ET AL. *v.* STATE OF MARYLAND, USE OF COLLINS, ET AL.

[No. 213, September Term, 1962.]

(Three Appeals In One Record)

230

*Decided by modified opinion filed July 11, 1963.*

*Motions for rehearing and for modification of opinion, filed May 31, 1963, and June 4, 1963, rehearing denied July 11, 1963, and opinion modified.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Herbert F. Murray,* with whom were *Clater W. Smith, Robert E. Powell,* and *Smith, Somerville & Case* on the brief, for David L. and Elsie H. Wiggins, part of appellants.

*Eugene A. Alexander, III,* with whom were *Nevin E. Leese* and *Rome & Rome* on the brief, for Irfan Kipman and Ilham N. Basay, part of appellants.

Submitted on brief by *Richard H. James* for Elsie S. Wiggins and David L. Wiggins, other appellants.

*Francis J. Monahan,* for State of Maryland, use of Hazel M. Collins, etc., part of appellees.

*Thomas F. Comber,* 3rd, with whom were *Wm. Pepper Constable* and *Constable, Alexander & Daneker* on the brief, for Constance Basay, other appellee.

Horney, J., delivered the opinion of the Court.

These consolidated cases arose out of an accident which occurred on the Baltimore-Washington expressway during a severe snowstorm in January of 1961. As a result of a rear-end collision of a moving automobile with a standing automobile that had been stopped for the purpose of removing ice and snow from the windshield, a pedestrian was killed, passengers in both vehicles were injured and the automobiles were damaged. The appeals present multiple questions pertaining to primary and contributory negligence.

Sometime after midday on the day of the snowstorm, Ilham N. Basay left New York in his automobile to return to the vicinity of Washington. He was accompanied by Constance Basay, his wife, and Irfan Kipman, a friend, who was driving. The automobile was not equipped either with chains or snow tires. It was snowing when they left New York. As they proceeded south, and the storm worsened, they inquired about chains in New Jersey and about snow tires in Delaware, and failing to find either, continued to drive on without them.

On the same day, David L. Wiggins and Elsie S. Wiggins, his wife, who were moving from Maryland to Florida, left Towson in their automobile about four-thirty in the afternoon. Chains had been put on because of the snow. At first, despite the heavy snow and strong wind, visibility was fair. But, after leaving Baltimore the accumulation of ice and snow on the windshield, particularly between the wiper blades, began impeding the motion of the wipers and closing in on the driver's vision, and caused him to stop to clear the windshield. In stopping he pulled over to the right and straddled the foot high ridge left by the snow plows. He had not gone farther off the plowed portion of the highway because of the deep snow and what he thought was a downward slope of the shoulder.

After the Wigginses stopped, the husband, who was driving, set the hand brake, left the motor running and the lights on, and got out. As he began to remove the ice and snow from the windshield, two or three vehicles went by without difficulty: there was considerably more than twelve feet between

the left side of the stopped automobile and the ridge of snow on the left side of the southbound lanes of the highway. Another automobile stopped on the right shoulder a short distance ahead of the Wigginses. The driver got out and began walking on the edge of the plowed portion of the highway toward the Wiggins vehicle (for what reason is not apparent from the record). This was Luther G. Collins. David Wiggins first saw the Basay automobile when it was about a hundred yards away and continued to watch it because it had not moved to its left to pass the Wiggins vehicle. When it became certain the oncoming vehicle was not going to turn out and go by, the husband shouted a warning to his wife and stepped backward toward the center of the highway. The Basay automobile struck the Wiggins automobile in the rear and propelled it forward and to the left for about a car's length so that after the collision it was entirely on the plowed surface of the highway along side of the ridge of snow. Collins was found dead in front of the right bumper of the Wiggins automobile.

As they were approaching the scene of the accident, the Basays had run into heavy snow, gusty winds and varying visibility. At times while driving through drifting snow they could not see anything at all for four or five seconds. Just before the collision occurred, Ilham Basay had seen red lights less than three hundred feet ahead in the slow traffic lane in which they were traveling and had told Kipman that the vehicle in front of them had stopped. But Kipman, because he thought he was a greater distance behind the stopped vehicle than he was, reduced his speed slightly but kept on going through drifting snow without being able to see. When he emerged he saw the stopped vehicle "right in front" of him. It was then too late to turn left because another vehicle was approaching the Basays from the rear in the fast lane. Instead, Kipman applied his brakes, turned right and skidded into the stopped vehicle. The left front of the Basay automobile struck the right rear of the Wiggins automobile. The Basays came to a stop in the deep snow by the side of the highway. At the time they were closing in on the Wiggins automobile, Constance Basay, who was riding on the front seat, had turned

partially around to talk to her husband on the back seat, and she did not see the Wiggins vehicle until after the collision.

There were conflicting versions as to where the Wigginses had stopped. According to David Wiggins, he had pulled to his right and straddled the snow ridge along side of the road. Elsie Wiggins corroborated her husband on this point. But, according to Kipman, the Wiggins automobile was in the slow lane and this was corroborated by Ilham Basay. The written report of the accident made by the trooper (Richard D. Vestrand) from notes he had taken while conducting the investigation tend to also corroborate Kipman in that (according to the report) both operators had stated in the presence of each other at the scene that Wiggins was stopped in the traveled portion of the highway to clean the windshield.

There was also a difference in the recollections of the Wigginses as to the ability to see through the windshield when they stopped to clear it. The husband said that his vision was seriously limited, but the wife stated that her view through the windshield was not completely obscured. The evidence as to whether it was practicable to stop farther off the highway was also contradictory. Instead of driving on with his head out the window until he reached a safer place to stop, David Wiggins stopped where he did because of the deep snow and a downward slope of the shoulder. And Elsie Wiggins stated that they had stopped at what they thought was a suitable place. But the evidence of other witnesses indicates that vehicles equipped with chains could be driven into the snow without getting stuck. The tow truck and police car were driven onto and off the shoulders. And the Collins vehicle (which had stopped on the shoulder) was later backed off of it onto the plowed surface of the highway.

The trooper, after attending to more imperative matters concerning the dead and injured, checked the position of the involved vehicles but he could not determine the point of impact. At the time of the accident the expressway was marked as a snow emergency route with signs warning motorists that there should be no stopping or standing during a snow emergency.

The suit brought by Hazel M. Collins (in the name of the State for her use) as the surviving wife of her deceased hus-

band and as the administratrix of his estate against the Wigginses, Kipman and Ilham Basay resulted in a judgment for the plaintiff in both capacities. The suit brought by Constance Basay against David Wiggins and Kipman resulted in a judgment for the plaintiff. The suit brought by the Wigginses against Kipman and Ilham Basay resulted in a judgment for the defendants. A fourth suit brought by Ilham Basay on behalf of himself and his insurer against David Wiggins resulted in a judgment for the defendant (because the jury found that the negligence of the driver Kipman was imputable to the owner Basay) and no appeal was taken. There are therefore three appeals in the record.

At the trial, the court denied all motions for directed verdicts and submitted the cases to the jury on issues primarily framed to ascertain who was negligent and who was not and (when required) to determine the damages to be assessed. The lower court instructed the jury generally as to the law of negligence in motor vehicle cases and particularly with regard to the negligence of the drivers of the involved vehicles—each of whom claimed that he was free of all negligence but asserted that the other was chargeable with negligence which was the proximate cause of the collision.

With respect to Kipman, the court instructed the jury that (under the provisions of § 211 (a), (b) and (e) of Art. 66½) the driver of a motor vehicle on a highway is required to drive at a reasonable and prudent speed consistent with existing conditions; that the driver has a duty to decrease his speed (even though it may then be less than the posted limit) to such extent as may be necessary to avoid colliding with a pedestrian or a vehicle whenever a special hazard exists; and that the driver, because he is bound to anticipate the presence of pedestrian and vehicular traffic on a highway, is required to exercise due care commensurate with the situation whenever his vision is obscured or restricted by the weather or other conditions. Neither Kipman nor Ilham Basay excepted to this part of the instructions though they did interpose objections to other parts of the charge.

With respect to David Wiggins, the court informed the jury

that it was unlawful (under § 244 (a) of Art. 66½) to stop and leave a motor vehicle standing on the main traveled part of a highway if it was practical to leave the vehicle off the highway and that it was unlawful "to disobey" the signs and markers warning motorists not to stop or stand on a snow emergency route during an emergency. After stating that a violation of the statute and snow emergency regulation was evidence of negligence and that (aside from the snow emergency regulation) Wiggins was obliged to exercise reasonable prudence and caution in stopping where he did under the existing weather and road conditions, the jury was further informed that if it found that the Wiggins automobile had been stopped either partly or entirely on the plowed portion of the slow lane of the highway when the driver knew or should have known that the weather and atmospheric conditions were such as to obscure or make it difficult for motorists approaching from the rear to see the standing automobile; that he could or should have anticipated that another motor vehicle traveling south in the slow lane might not be able to see the standing vehicle in time to avoid colliding with it; and that, if in so doing, he acted other than as a reasonably prudent and cautious person would have acted under similar circumstances, then Wiggins would be guilty of negligence and would not be absolved from liability by reason of the intervening action of Kipman in the operation of the Basay automobile. The Wigginses, as plaintiffs, excepted only to the failure of the trial court to instruct the jury that there was no evidence of their being guilty of any negligence proximately causing the accident. As defendants, the Wigginses excepted to the failure of the court to instruct the jury "as a matter of law" to the effect that they were not guilty of negligence because there was no legally sufficient evidence to show that they had failed to get as far off the highway as was practical within the meaning of § 244 (a) of Art. 66½ and because the evidence showed that their automobile was a disabled vehicle within the meaning of § 244 (b) of Art. 66½ in that the accumulated ice and snow on the windshield made it unsafe to proceed further without stopping momentarily to clean it. As defendants the Wigginses interposed at the trial several other objections to the

charge with respect to the questions of practicability and disability, but they do not raise them here and it is not necessary to particularize them.

All of the motions for judgments *n.o.v.*, or, in the alternative, for new trials, were also denied by the trial court, and these appeals followed.

## CASE I

In the case in which Hazel Collins was the plaintiff in a dual capacity, the judgments against the defendants (Irfan Kipman and Ilham N. Basay and David L. and Elsie S. Wiggins) will be affirmed.

### Case Against Kipman and Ilham Basay

The defendants Kipman and Ilham Basay contend (i) that the negligence of the Wigginses was the sole proximate cause of the collision; (ii) that the evidence was legally insufficient to show that these defendants were guilty of any negligence contributing to the happening of the accident; and (iii) that the deceased was guilty of contributory negligence as a matter of law.

### (i) and (ii)

Even if the stopping of the Wiggins automobile entirely on, or partly on and partly off, the plowed portion of the highway was a negligent act and a proximate cause of the accident, it is apparent that there was sufficient evidence of negligence on the part of Kipman (and his negligence was imputable to Ilham Basay) for the trial court to have overruled their motions for a directed verdict and to justify the verdict of the jury that they were in fact guilty of negligence which was also a proximate cause of the collision.

The record discloses that even after he had been warned of and seen a stopped or standing vehicle less than three hundred feet ahead of him in the same traffic lane in which he was traveling, Kipman continued to drive the Basay automobile (even though it was not equipped with chains or snow tires) at a speed of twenty miles an hour, or thirty feet a second, through drifting snow that completely obliterated his vision for four or five seconds at a time. This, as the jury found, under instructions which were not objected to, was a clear vio-

lation of Code (1957), Art. 66½, § 211 (a), (b) and (e). The case of *Brumage v. Blubaugh,* 204 Md. 144, 102 A. 2d 568 (1954), is in point. There, where a truck was being operated without chains at a speed of twenty-five to thirty miles an hour on a slippery road, when snow was falling and blowing over the roadway, and struck a vehicle parked partly on and partly off the road with its lights on, it was held that the refusal of the trial court to grant motions for a directed verdict or a judgment *n.o.v.,* on the premise that the accident was unavoidable, was proper. See also *People's Drug Stores v. Windham,* 178 Md. 172, 12 A. 2d 532 (1940), where it was said (at p. 185) that "[o]ne who operates a motor vehicle on a public highway must anticipate the presence of others thereon, and must exercise constant vigilance to avoid injuring them, and if his view is obstructed by smoke, fog, rain, snow, sleet, or other atmospheric conditions, he must so operate it as to be able, by the exercise of reasonable care, to avoid injuring others." We think the refusal of the trial court to direct a verdict in favor of these defendants, or to enter a judgment *n.o.v.* in their favor, was proper.

### (iii)

The refusal of the trial court to rule as a matter of law that the deceased was guilty of contributory negligence was likewise proper. The absence or presence of contributory negligence is generally a question for the jury. *Jackson v. Forwood,* 186 Md. 379, 47 A. 2d 81 (1946). It is only where the minds of reasonable persons cannot differ that the court is justified in deciding the question as a matter of law. *Brown v. Bendix Aviation Corp.,* 187 Md. 613, 51 A. 2d 292 (1947); *Thomas v. Baltimore Transit Co.,* 211 Md. 262, 127 A. 2d 128 (1956); *Boyd v. Simpler,* 222 Md. 126, 158 A. 2d 666 (1960). And if there is no evidence of acts or conduct from which reasonable minds could find or infer negligence on the part of a plaintiff, it would be error not to withdraw the issue of contributory negligence from the consideration of the jury. *Lindenberg v. Needles,* 203 Md. 8, 97 A. 2d 901 (1953); *Thomas v. Baltimore Transit Co., supra.*

In the absence of special circumstances, pedestrians using

public highways have a duty to watch for and expect to find approaching vehicular traffic thereon, but drivers of motor vehicles have a corresponding duty—particularly when there are no sidewalks—to watch for and expect to find pedestrians walking on or off the sides of the highway. *Fotterall v. Hilleary,* 178 Md. 335, 13 A. 2d 358 (1940). See also *Heffner v. Admiral Taxi Service,* 196 Md. 465, 77 A. 2d 127 (1950).

In this case, where there was evidence that the pedestrian was walking as close to the snow ridge as he could get without walking in deep snow, and there was no evidence that he had contributed in any way to the accident which caused his death, there is a presumption that the deceased had exercised ordinary care for his own safety which clearly precluded the court from withdrawing the case from the jury on the ground of contributory negligence. *Baltimore Transit Co. v. Castranda,* 194 Md. 421, 71 A. 2d 442 (1950).

### Case Against the Wigginses

As defendants in this case, the Wigginses contend (i) that there was no legally sufficient evidence that they were negligent and (ii) that the deceased was guilty of contributory negligence or assumption of risk.

### (i)

The first contention is based on three interrelated theories: first, that the evidence shows that these defendants exercised due care in stopping momentarily on the right side of the plowed portion of the highway to clean their windshield; second, that the momentary stopping of their automobile was merely a condition and not the proximate cause of the accident; and third, that the sole cause of the accident was the negligence of Kipman in driving the Basay automobile into the rear of the Wiggins automobile while it was lawfully standing at the side of the roadway. However, all of these questions seem to have been submitted to the jury as questions of fact under instructions which were objected to below but were not presented in this Court because the Wigginses elected to seek reversal without, and not with, a new trial.

There was evidence that the Wigginses had stopped entirely on or partly on and partly off the highway (depending on

whose testimony is accepted) because of the deep snow and the downward slope of the shoulder and because they had thought the place was suitable, but there was also evidence that other vehicles equipped with chains (as was the Wiggins automobile) had driven into the snow on the side of the highway and out of it without getting stuck.

The trial court instructed the jury to the effect that the Wigginses would be guilty of negligence, under the provisions of the statute (§ 244 (a) of Art. 66½) and the requirements of the snow emergency regulation, by stopping and leaving their automobile where they did under the existing weather and road conditions if the jury found that it was practical for them to have stopped and left the vehicle off the highway. But the court refused to give an instruction that the Wiggins automobile was a disabled vehicle within the meaning of § 244 (b) of Art. 66½.

The Wigginses excepted to the failure of the court to instruct the jury as a matter of law that their automobile was so disabled as to require stopping it where they did in order to clean the windshield, but we think the lower court properly refused to give the instruction. While the driver of a motor vehicle whose vision is obscured by dirt or atmospheric conditions (such as ice and snow) must exercise care commensurate with the situation (see *People's Drug Stores v. Windham, supra,* and *State, use of Mitchell v. Jones,* 186 Md. 270), it is generally held that the provisions of a statute exempting disabled vehicles from the prohibition of stopping on a highway are not applicable when a vehicle has been stopped on the main traveled part of such highway for the purpose of removing an obstruction from the windshield. See *O'Brien v. Dunigan,* 210 P. 2d 567 (Ore. 1949) ; *Legere v. Tatro,* 52 N. E. 2d 11 (Mass. 1943) ; *Dillon v. Sterling Rendering Works,* 106 P. 2d 358 (Colo. 1940) ; *Sidle v. Baker,* 3 N. E. 2d 537 (Ohio 1936). Cf. *Tuhn v. Clark,* 41 N. W. 2d 13 (Iowa 1950), where the question was held to be one of fact rather than law. And see the Annotation: *Parking Regulation—"Disabled" Vehicle,* 15 A.L.R. 2d 909, 922, § 12.

The Wigginses also excepted to the failure of the court to instruct the jury as a matter of law that they had stopped their

automobile as far off the highway as it was practical to get under the existing weather and road conditions, but because the evidence on this point was conflicting, it is clear that the question of practicality was properly submitted to the jury.

It may be (though we expressly do not decide) that the trial court went too far in instructing the jury that it was evidence of negligence for a motorist to stop on a snow emergency route during a snow emergency and that the court did not go far enough by omitting to specifically inform the jury that it could consider the obscurative condition of the windshield along with other parts of the evidence in determining whether or not it was practical for the Wigginses to have gotten completely off the plowed portion of the highway. However, since the Wigginses, both as defendants and as plaintiffs, chose not to raise either of these questions on appeal, they are not before us.

(ii)

The only other contention of these defendants is that the deceased was guilty of contributory negligence or assumption of risk. Though both may arise in a given case from the same set of facts, the two are not the same. Contributory negligence consists of some act of negligence on the part of a plaintiff which directly contributed to the happening of the accident, while assumption of risk means the voluntary act of incurring the risk of an accident which may not occur and which the person assuming the risk may be careful to avoid. *Bull Steamship Lines v. Fisher*, 196 Md. 519, 77 A. 2d 142 (1950). See also *Jimmy's Cab v. Isennock*, 225 Md. 1, 169 A. 2d 425 (1961); *People's Drug Stores v. Windham, supra*, at p. 186 of 178 Md. Since the contention that the deceased was guilty of contributory negligence was fully considered in the case against Kipman and Ilham Basay, it is not necessary to consider this point further. And inasmuch as a question involving assumption of risk was neither raised by trial counsel nor considered by the lower court, there is no reason for us to consider the alternative contention that the deceased assumed the risk of being injured or killed.

## CASE II

In the case in which Constance Basay was the plaintiff, the judgments against the defendants (Irfan Kipman and David L. Wiggins) must likewise be affirmed.

### Case Against Kipman

The defendant Kipman contends, as he did in Case I, that the negligence of the Wigginses was the sole proximate cause of the collision and that the evidence was legally insufficient to show that he was guilty of any negligence contributing to the happening of the accident. Since both of these contentions were fully considered in Case I and decided adversely to him, it is not necessary to consider either point further. The only other contention is that the plaintiff was guilty of contributory negligence as a matter of law. The theory is that the plaintiff (a passenger in the Basay automobile) had the opportunity and an obligation to observe the negligent acts of Kipman and to protest or warn him of impending danger but because she failed to do so, she thereby contributed to the accident which caused her injuries. We do not agree. Much of what was said in Case I with respect to the alleged contributory negligence of Luther Collins is applicable here but will not be repeated.

While there are cases in which guest-passengers have been held guilty of such contributory negligence as precludes recovery as a matter of law, the general rule is that the question should be submitted to the jury. *W. B. & A. R. R. v. State, use of Hall,* 136 Md. 103, 111 Atl. 164 (1920) ; *Mitchell v. Dowdy,* 184 Md. 634, 42 A. 2d 717 (1945) ; *Havens v. Schaffer,* 217 Md. 323, 142 A. 2d 824 (1958). See also *Baltimore Transit Co. v. Bramble,* 175 Md. 334, 2 A. 2d 416 (1938).

In *Dashiell v. Moore,* 177 Md. 657, 11 A. 2d 640 (1940), where a guest failed to see a stray mule before it was struck by the automobile in which he was riding as a passenger, it was stated that the guest was not held to the same degree of vigilance as the driver and that he was not required to warn of dangers which must have been as apparent to the driver as to the guest. Moreover, even if it is assumed that the guest-passenger in this case was guilty of inattentiveness in not watching the roadway, there is nothing in the record (in view of

the fact that the driver failed to heed the warning of the owner) to show that had she kept a constant watch the accident could have been avoided. To constitute a bar to her right to recover damages, her negligence must have been concurrent and a proximate cause of the accident. Cf. *Goldman v. Johnson Motor Lines*, 192 Md. 24, 63 A. 2d 622 (1949).

### Case Against David Wiggins

Since the only contention of this defendant in this case is that Constance Basay assumed the risk of being injured—an issue which was neither raised nor considered below—there is nothing to consider on appeal. See part (ii) in the case against the Wigginses under Case I.

### CASE III

In the case in which the Wigginses were plaintiffs, the judgment in favor of the defendants (Irfan Kipman and Ilham N. Basay) must also be affirmed.

When at the end of the whole case the Wigginses as plaintiffs moved the trial court to instruct the jury that there was no evidence of negligence on their part directly contributing to the accident and to direct the jury that Kipman and Ilham Basay were guilty of negligence as a matter of law, the court overruled both motions and, as previously stated herein, instructed the jury that the violation by David Wiggins of § 244 (a) of Art. 66½ and the snow emergency regulation was evidence of negligence. Whereupon, the Wigginses excepted to the failure of the court to instruct the jury that there was no evidence of their being guilty of any negligence proximately causing the accident.

The only question in this case—since the jury found in Case I that the Wigginses (as well as Kipman and Ilham Basay) were guilty of negligence which was a proximate cause of the accident—is whether there was evidence of negligence on the part of the Wigginses (or rather evidence from which an inference of negligence could be adduced) to warrant submission of the case to the jury. We think there was. In addition to showing the extremely poor visibility and hazardous condition of the roadway, the record, as has been previously

pointed out, discloses that other vehicles, such as the tow truck, police car and Collins' automobile, had been driven into and out of the deep snow on both sides of the plowed portion of the southbound lane of the highway without difficulty. This was enough to warrant overruling the motion for an instructed verdict and the submission of the question of negligence to the jury.

The Wigginses as plaintiffs relied heavily on *Goldman v. Johnson Motor Lines, supra,* to support their contention that there was no evidence of negligence on their part directly con- tributing to the accident, but as we read them, the facts in that case are clearly distinguishable from those in this case. There, it was ruled as a matter of law that the plaintiff was free from contributory negligence (despite the fact that he had parked his automobile partially on the highway) because such blocking of the road as he had caused (at a distance of at least fifty feet from the scene of the accident) had not directly con- tributed to the collision of the two other vehicles. But here, where the standing automobile was one of the two involved in the collision, the question as to freedom from negligence was a question of fact to be determined by the jury. The evidence was not such as to warrant a directed verdict in favor of the Wigginses as plaintiffs.

In any event, we think the refusal of the trial court to in- struct a verdict in favor of the plaintiffs in this case, or to enter a judgment *n.o.v.* in their favor, was proper.

> *Judgments affirmed; one-half of the costs shall be paid by Irfan Kipman and Ilham N. Basay; and the other one-half shall be paid by Da- vid L. and Elsie S. Wiggins.*