## J. LAURENCE MILLISON v. JOSEPH ABELL CLARKE ET UX.

[No. 854, September Term, 1975.]

*Decided June 28, 1976.*

The cause was argued before MORTON, DAVIDSON and MOORE, JJ.

*David M. Williams,* with whom were *Burt, White & Williams* on the brief, for appellant.

*Oliver R. Guyther* for appellees.

MOORE, J., delivered the opinion of the Court.

J. Laurence Millison prevailed in a jury trial upon a declaration for declaratory relief and money damages arising out of a lease of business premises between himself and the appellees, Joseph Abell Clarke and Judith Ann Clarke, his wife. The verdict in his favor was in the sum of $7,500. He contended below that the evidence clearly

established that his damages were $11,650 and, on that ground, he filed a motion for judgment n.o.v. On this appeal he claims that the trial court erred in denying his motion.

Although there was no cross appeal, the appellees' brief argues that the trial court erred in failing to dismiss the appeal pursuant to Maryland Rule 1013, as not timely filed. It is our conclusion that the lower court properly denied appellant's motion for judgment n.o.v., and we find it unnecessary to consider appellees' assertion of error.[1]

I

The property involved in this controversy is located in the Lexington Park area of St. Mary's County. In the summer of 1970 appellant entered into a contract for the construction of a "Mr. Swiss Drive-In" in contemplation of a lease of the premises to an organization called "Mr. Swiss of America, Inc.", a nationwide "fast food" business bearing the trade name, Mr. Swiss. Although the lease was executed, bankruptcy of Mr. Swiss organization intervened and operations by that company never commenced. On July 18, 1972, Mr. and Mrs. Clarke, the appellees, entered into a lease of the premises for a term of ten years, from September 1, 1972 to August 1, 1982, at a rental of $500 per month for the first year, $750 per month for the second year and $1070 per month for the succeeding eight years. The Clarkes paid a deposit in the sum of $1,000 but never took possession under the lease nor paid any rent. In January 1973 they returned the key of the premises to Mr. Millison. Mr. Millison leased the premises to interim tenants in 1973 and 1974 but formally notified the Clarkes that he was doing so to mitigate their damages and that he reserved all claims against them for unpaid rent.

On February 5, 1974 Mr. Millison filed a suit in equity in the Circuit Court for St. Mary's County seeking declaratory relief and money damages. On November 14, 1974 the action was transferred to the Law Docket and on May 2, 1975 Mr.

---

1. Under Maryland Rule 1035 (a) 2 and (b) 3 we could on our own motion, dismiss the appeal.

Millison filed an amended bill for declaratory relief at law. He also prayed damages in the amount of $11,650 representing rentals due for the period September 1, 1972 through April, 1975, less the $1000 deposit and the total rentals received from the interim tenants. The Clarkes interposed a general denial and a counterclaim in the amount of $14,384.72 — the amount of damages claimed against them in a suit by Taylor Freezer Equipment Corporation for equipment which they had contracted to purchase and upon which they had made a deposit of $1,650 as of June 30, 1972.

At the trial below the Clarkes defended on several alternative grounds, including (a) that they were denied access to the premises because of road construction up to at least December of 1972; (b) that a part of the demised premises had been conveyed by Mr. Millison to the State Roads Commission after condemnation proceedings; and (c) that they were induced to enter into the lease by misrepresentation. Mr. Millison moved for a directed verdict in his favor at the close of all the evidence but the motion was denied. The court gave detailed instructions to the jury including a summary of the evidence and defined the circumstances under which the jury might find the Clarkes answerable in money damages. Exceptions were taken by counsel for Mr. Millison to various aspects of the charge, not including the damages to which Mr. Millison would be entitled. At a bench conference concerning exceptions to the charge made by counsel for the Clarkes and relating to the damages claimed in the Clarkes' counterclaim, appellant's counsel at one point observed, "I think the damages are stipulated to in the amount of $11,650." There was no request by appellant for an instruction that appellant's damages had been so stipulated and, indeed, we find no such stipulation in the record.

As previously noted, the jury returned a verdict for Mr. Millison in the amount of $7,500. The foreman was questioned with respect to the counterclaim and announced that they had failed to consider it. Upon further deliberation, a verdict on the counterclaim was found in

favor of Mr. Millison. In his motion for judgment n.o.v. Mr. Millison requested that the $7,500 judgment be set aside and judgment entered in his favor in the amount prayed in the bill, namely $11,650. On this appeal, he poses a single question:

> "Did the trial court err in denying the Appellant's Motion for Judgment N.O.V., because the undisputed evidence showed that the Appellant's damages were in excess of the $7,500.00 verdict by the jury for the Appellant?"

## II

In *Cheek v. J. B. G. Properties, Inc.*, 28 Md. App. 29, 43, 344 A. 2d 180 (1975) we stated, "We find no authority for the use of the judgment n.o.v. to reduce the verdict of the jury." Similarly, we find no authority for the proposition that a judgment n.o.v. may be used to increase a jury's verdict. As stated by Chief Judge Brune in *Havens v. Schaffer*, 217 Md. 323, 325, 142 A. 2d 824 (1958), "If the verdict was inadequate, that could have served as the basis of a motion for a new trial. . . ." The propriety of a motion for new trial under such circumstances was also recognized in *Camden Sewer Co. v. Mayor and Council of Salisbury*, 170 Md. 352, 185 A. 126 (1936); *Trombero v. McWilliams*, 221 Md. 399, 157 A. 2d 801 (1960); *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 167 A. 2d 96 (1961); 3 Poe, *Pleading and Practice* § 345 (6th ed. 1975); and 4 Sedgwick on *Damages* § 1368 (9th ed. 1920).

In his motion below Millison was, in effect, seeking an additur in the amount of $4,150. While this remedy appears not to have been recognized in Maryland, courts elsewhere which have accepted [2] or rejected [3] it have always done so with the understanding that, where the quantum of damages is in dispute, the grant of an additur is an alternative to a new trial and is contingent upon the defendant's acquiescence in the augmentation of the verdict.

---

**2.** *See,* Jehl v. Southern Pacific Co., 59 Cal. Rptr. 276 (S. Ct. 1967); McCall v. Waer, 487 S.W.2d 308 (Tenn. 1972).

**3.** *See,* Dimick v. Schiedt, 293 U. S. 474 (1935).

As stated by the Supreme Court of Louisiana, where additur and remittitur were statutorily created and are treated alike,[4]

> "As in the federal system, and other state systems, the procedure is connected with the procedures concerning new trials. . . . [I]t is only when the trial judge is of the opinion that a new trial should be ordered because the verdict is excessive or inadequate that remittitur or *additur is available as a means of avoiding a new trial.*" [Emphasis added.] *Miller v. Chicago Insurance Co.,* 320 So. 2d 134, 136 (La. 1975).

In permitting additur for the first time in Nevada, that state's Supreme Court observed,

> "It has been recognized in Nevada that our courts have the power to condition an order for a new trial on the plaintiff's acceptance of remittitur. [Citations omitted]. *Our courts, however, have not heretofore had the power to condition an order for a new trial on acceptance of an additur.* We believe . . . that they should have such power." [Emphasis added.] *Drummond v. Mid-West Growers Cooperative Corp.,* 542 P. 2d 198, 205 (Nev. 1975).

Assuming, without deciding, that such a motion could be made in Maryland, its utility in the present case would be nonexistent, since the quantum of damages is here subject to dispute. *Quesnel v. Raleigh,* 258 A. 2d 840 (Vt. 1969). The jury could, for example, reasonably have found that the Clarkes were denied access to the demised premises for a period of months, thus substantially reducing appellant's claims for unpaid rentals. At all events, the Clarkes have not acquiesced.

We note further that even if appellant had, pursuant to Maryland Rule 563 (a) 3, conjoined with his motion a motion for a new trial, appellate courts in Maryland have

---

4. La. Code of Civil Pro. art. 1813.

traditionally been loath to disturb "the exercise of the lower court's discretion in denying a motion for a new trial because of the inadequacy or excessiveness of damages." *Kirkpatrick v. Zimmerman*, 257 Md. 215, 218, 262 A. 2d 531 (1970), cited in *Carl M. Freeman Assoc., Inc. v. Murray*, 18 Md. App. 419, 424, 306 A. 2d 548 (1973).

*Judgment affirmed; costs to be paid by appellant.*